UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Angela S. Troxell,<br><br>    Plaintiff,<br><br>v.<br><br>Pinnacle Staffing, Inc., Peak Workforce Solutions, LLC, and Meritor, Inc.,<br><br>    Defendants. | Case No. _____<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Angela S. Troxell, complaining of the above-named Defendants, would respectfully show unto the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Angela S. Troxell is a resident of Spartanburg County, South Carolina.

2.      Defendant Pinnacle Staffing, Inc. ("Pinnacle") is a corporation organized and existing under the laws of the State of South Carolina with its main office in Greenville, South Carolina.

3.      Defendant Peak Workforce Solutions, LLC ("Peak") is a limited liability company organized and existing under the laws of the State of South Carolina with its main office in Greenville, South Carolina.

4.      On information and belief, Peak is a related entity to and alter ego of Defendant Pinnacle. With respect to Plaintiff's employment, Pinnacle and Peak were one and the same.

5.      Defendant Meritor, Inc. ("Meritor") is a corporation organized and existing under the laws of the State of Michigan with headquarters in Troy, Michigan. At all times material to this Complaint, Meritor had multiple locations in the State of South Carolina.

1

6. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as well as the common law of the State of South Carolina.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Defendants are each an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

9. This Court has personal jurisdiction over Defendant Pinnacle Staffing, Inc./Peak Workforce Solutions, LLC (hereinafter, "Pinnacle/Peak") and over Defendant Meritor, Inc.

10. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3). At all times material to this Complaint, Defendant Pinnacle/Peak operated its business from Greenville County, South Carolina and maintained and administered Plaintiff's employment records within the District of South Carolina.

11. Plaintiff has exhausted her administrative remedies, having filed the appropriate charge with the U.S. Equal Employment Opportunity Commission and having received her Notice of Right to Sue on or about August 25, 2017. Accordingly, this action is timely filed.

## GENERAL ALLEGATIONS

12. In the spring of 2015, Plaintiff interviewed with Pinnacle/Peak for the position of its onsite staffing manager at the Meritor facility in Forest City, North Carolina.

13. Meritor is a staffing client of Pinnacle/Peak and the two entities have a longstanding business relationship.

14. The interview process was rigorous and consisted of three different interviews over the course of approximately three weeks.

15. Each time Plaintiff attended an interview, she was accompanied by a representative of Pinnacle/Peak. This representative, Rob Williams, was the Vice President of Pinnacle/Peak.

16. During these interviews, Plaintiff also met with Reginald Gaither, Meritor's HR Director, and Kevin Parkhill, the plant manager for the Meritor facility in Forest City.

17. Collectively, these representatives of Pinnacle/Peak and Meritor described Plaintiff's future job duties as an "onsite manager" for Pinnacle/Peak in great detail. They advised Plaintiff that she would need to manage the temporary staff at the facility as well as meet the needs of supervisors at all levels.

18. These representatives also advised Plaintiff that she would be required to complete daily, weekly, monthly, and quarterly reports. Plaintiff's other duties as onsite manager were to include managing the human resources and benefits of approximately fifty (50) to sixty (60) temporary associates at the Meritor facility.

19. Plaintiff was never advised that she would, in addition to her duties as onsite manager, be required to perform secretarial or receptionist duties for Meritor.

20. After the interview process, Pinnacle/Peak hired Plaintiff for the position of its onsite manager at the facility of its client, Meritor. A copy of the offer letter that Pinnacle/Peak sent to Plaintiff is attached hereto and incorporated herein as Exhibit A.

21. Plaintiff's offer letter stated, "An employment agreement will be completed between the parties detailing the terms of employment prior to your first day of employment." Plaintiff later signed an employment agreement with Pinnacle/Peak, but she was never provided a copy.

22. Plaintiff's first day of work was on July 21, 2015.

3

23. As Pinnacle/Peak's onsite manager at Meritor's facility in Forest City, Plaintiff was responsible for hiring, recruiting, benefits administration, HR administration, reporting, terminating, and payroll.

24. As Pinnacle/Peak's onsite manager at Meritor's facility in Forest City, Plaintiff was responsible for covering three (3) shifts.

25. Throughout the course of her employment with Pinnacle/Peak, Plaintiff worked exclusively at the Meritor facility in Forest City.

26. On her first day of work, Meritor's plant manager, Kevin Parkhill, informed Plaintiff for the first time that she would also be expected to perform receptionist and secretarial duties for Meritor.

27. Mr. Parkhill informed Plaintiff that her workstation would be a small, metal desk in the Meritor lobby and that Plaintiff would be responsible for making sure all visitors to the facility signed in and out on a visitors log and carried a visitors badge at all time. Plaintiff also discovered that she would be responsible for tracking the visitors' locations in the facility throughout the week.

28. Mr. Parkhill also informed Plaintiff that she would be responsible for all incoming and outgoing mail and other secretarial / receptionist duties, which interfered with Plaintiff's official job duties as onsite manager and rendered here unable to complete such duties during her work day.

29. During the course of her employment, Plaintiff was required to attend morning plant meetings several times a week.

30. During plant meetings, Mr. Parkhill repeatedly told Plaintiff that she "worked for him" and needed to "keep him happy." Mr. Parkhill also berated and humiliated Plaintiff during these meetings.

31. Plaintiff consistently had to work at least sixty (60) to seventy (70) hours each week to complete her responsibilities as onsite manager in addition to the secretarial / receptionist duties assigned by Meritor.

32. Meritor and Pinnacle/Peak did not provide Plaintiff with a quiet, professional environment from which Plaintiff could complete her onsite manager duties. As a result, Plaintiff was at times forced to complete her onsite manager duties off-premises in her car or in fast food dining rooms.

33. Upon information and belief, other similarly-situated male onsite managers who worked for Pinnacle/Peak at other Meritor facilities were provided with private office space from which to complete their duties as onsite managers.

34. Upon information and belief, other similarly-situated male onsite managers who worked for Pinnacle/Peak at other Meritor facilities were not required to perform any secretarial or receptionist duties for their client companies in addition to their responsibilities as onsite managers.

35. Plaintiff repeatedly complained in person and in writing about her working conditions and about having to perform receptionist and clerical duties to representatives of both Meritor and Pinnacle/Peak.

36. Plaintiff complained to Wayne Gens, Rob Williams, and Ken Thompson of Pinnacle/Peak and to Reginald Gaither and Kevin Parkhill of Meritor.

37. After Plaintiff complained about her working conditions and about having to perform receptionist and clerical duties, Ken Thompson, her supervisor from Pinnacle/Peak came to the Meritor facility unannounced. Mr. Thompson took Plaintiff into a training room, called Wayne Gens, Pinnacle/Peak's HR Director, on speakerphone, and proceeded to go over a three-page performance write-up.

38. Plaintiff was required to sign a copy of the evaluation/write-up, and when she requested a copy, Mr. Thompson told Plaintiff that he would send her an email with a list of things that she needed to improve on.

39. Plaintiff did not hear back from Mr. Thompson after this meeting and did not receive a list of things she needed to improve.

40. Three weeks later, on or about February 28, 2016, Plaintiff received a telephone call from Wayne Gens, asking her to meet with him at Pinnacle/Peak's office in Greenville the following morning, Monday, February 29, 2016.

41. At the meeting on February 29, 2016, Mr. Gens informed Plaintiff that she was being terminated from her position as onsite manager at the Meritor facility.

42. Also at that meeting, Plaintiff was required to turnover her laptop and cellular telephone.

43. Although Mr. Gens promised Plaintiff that he would find her another position, she never heard back from him after the meeting on February 29, 2016.

44. After being terminated from her position with Pinnacle/Peak, Plaintiff was unemployed for several months.

45. Since being terminated from her position with Pinnacle/Peak, Plaintiff has found another job but is making substantially less.

## FOR A FIRST CAUSE OF ACTION
### (Gender Discrimination and Retaliation)

46. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

47. Plaintiff, a woman, was fully qualified for her position as an onsite manager for Pinnacle/Peak at the Meritor plant in Forest City, North Carolina.

48. Plaintiff was required by Meritor management to personally provide receptionist duties and clerical services for Meritor in addition to her management duties for Pinnacle/Peak and at no additional compensation.

49. During her tenure as an onsite manager for Pinnacle/Peak at the Meritor plant in Forest City, Plaintiff was not provided with an office and was instead required to sit at the receptionist desk at Meritor.

50. In contrast, all of the similarly-situated male onsite managers who worked for Pinnacle/Peak at other Meritor facilities were provided with private offices from which to work and none of them were required to provide receptionist or clerical duties.

51. Plaintiff is informed and believes that, around the time of her employment, another woman who worked for Pinnacle/Peak as an onsite staffing manager at another client facility was treated similarly to Plaintiff in that, in addition to her duties as onsite staffing manager, she was expected to perform secretarial/receptionist duties for the client facility.

52. When Plaintiff repeatedly complained about her working conditions and this disparate, sexist treatment, Pinnacle/Peak terminated her employment.

53. Plaintiff is informed and believes that she was terminated from her position because of her gender and in retaliation for her questioning of the disparate treatment shown toward her.

54. Pinnacle/Peak and Meritor were joint employers of Plaintiff at all times and places pertinent herein.

55. Pinnacle/Peak and Meritor, jointly and severally, engaged in discriminatory and retaliatory acts against Plaintiff based on her gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

56. As a direct and proximate result of Defendants' illegal discrimination and retaliation, Plaintiff is informed and believes that she is entitled to all pay and benefits, reinstatement, retirement, a corrected personnel file, statutory compensatory damages, and statutory attorney's fees and costs.

## FOR A SECOND CAUSE OF ACTION
### (Failure to Pay Wages)

57. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

58. Meritor's requirement that Plaintiff serve as its receptionist or secretary was outside the scope of her employment by Pinnacle/Peak.

59. Meritor failed to pay Plaintiff even minimum wage in regard to her time spent providing those services to Meritor in violation of both federal and state law.

60. Plaintiff is entitled to be paid at least minimum wage for all such time, together with liquidated damages and other statutorily authorized damages, including attorney's fees and costs.

## FOR A THIRD CAUSE OF ACTION
### (Quantum Meruit / Unjust Enrichment)

61. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

62.     Plaintiff performed valuable services for Meritor that were beyond the scope of her employment by Pinnacle/Peak and was not paid for such services.

63.     Meritor has retained benefits which in justice and equity belong to Plaintiff and has been unjustly enriched at the expense of Plaintiff.

64.     Meritor has retained these benefits to the detriment of Plaintiff and it would be inequitable for Meritor to retain these benefits.

65.     Meritor has been unjustly enriched and should repay to Plaintiff the amounts in which it has been unjustly enriched.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Angela S. Troxell respectfully requests the following relief from this Court: entry of judgment in favor of Plaintiff and against the defendants; an award to Plaintiff of actual and compensatory damages in amounts determined to be appropriate by a jury at the trial of this case; statutory attorney's fees and costs; equitable relief in the nature of reinstatement; punitive damages in an appropriate amount; and any such other and further relief as the Court deems just and proper under the circumstances.

*Signature Page Follows*

**HARRISON | WHITE, P.C.**

By:     *s/ Marghretta H. Shisko*
John B. White, Jr. (Fed. ID No. 04619)
Marghretta H. Shisko (Fed. ID No. 11601)
178 West Main Street
P.O. Box 3547 (29304)
Spartanburg, SC 29306
(864) 585-5100
jwhite@spartanlaw.com
mshisko@spartanlaw.com

*Attorneys for Plaintiff*

November 17, 2017

Spartanburg, South Carolina

10